UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15-cv-238-RJC-DSC

| | |
|---|---|
| OTTO CONTAINER MANAGEMENT, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>GREENKRAFT, INC., a California corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **ORDER** |

**THIS MATTER** comes before the Court on Defendant Greenkraft, Inc.'s ("Defendant") Motion to Dismiss, or, Alternatively, Transfer Venue, memoranda in support, and supporting exhibits, (Doc. Nos. 10, 11 to 11-3, 14); Plaintiff Otto Container Management, LLC's ("Plaintiff") Response in Opposition and supporting exhibits, (Doc. Nos. 12, 13 to 13-3); the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 16); Plaintiff's Objections to the M&R, (Doc. No. 17); and Defendant's Response to Plaintiff's Objections, (Doc. No. 18).

**I.    BACKGROUND**

Plaintiff is a Delaware corporation doing business in Mecklenburg County. Plaintiff's business involves the distribution and maintenance of trash containers. Defendant is a California corporation that manufactures, sells, and services trash container trucks.

Accepting the factual allegations of the Complaint as true, in July 2013, Plaintiff offered to purchase four compressed natural gas trucks with extended warranties from Defendant. (Doc. 1: Complaint ¶ 8). On July 31, 2013, pursuant to prior conversations between the parties as well

as an initial invoice from Defendant, Plaintiff sent a purchase order via email to Defendant with the PO number "M000000216" (the "Initial PO"). (Doc. No. 13-1). The subject line of the email was "GREENKRAFT-M216." (Id.). The Initial PO contained the initial purchase price of $268,800 for the trucks and extended warranties, and it referenced Defendant's "Invoice #GKT-13-JFCT-03A."[1] The Initial PO also included on its fourth page a detailed list of terms and conditions, including a forum selection clause providing that any dispute shall be maintained in Mecklenburg County, North Carolina, and shall be governed by North Carolina law. (Id.). The Initial PO was never signed by either party. (Id.).

On August 12, 2013, Defendant sent an email under the same subject line of "GREENKRAFT-M216" to Plaintiff, which read, "Can you have our two forms signed please we need those to get the incentives [sic]." (Doc. No. 13-2). Plaintiff responded on August 13, 2013, by emailing the signed forms back to Defendant. (Id.). Later that day, Defendant sent another email under the same subject header requesting that "[Plaintiff] also get the purchase order that [Defendant had] prepared signed." (Id.). Attached to that email was a one-page form Defendant had prepared that was labeled "Purchase Order" (the "Second PO"). (Id. at 3). The Second PO was nearly identical to Defendant's Invoice Number GKT-13-JFCT-03 except that the Second PO was labeled as a purchase order and it displayed Otto Environmental Systems North America, Inc.[2] in the header instead of Greenkraft, Inc. (Id.). The Second PO did not reference any other purchase order or invoice number, it did not contain any terms or conditions

---

[1] It appears that Invoice Number "GKT-13-JFCT-03" relates to the trucks and Invoice Number "GKT-13-JFCT-03A" relates to the extended warranties. (Doc. Nos. 1-2, 1-3). The Court will refer to the invoices collectively as Invoice GKT-13-JFCT-03.

[2] The Court notes that Otto Environmental Systems North America, Inc. is a separate entity from Plaintiff Otto Container Management, LLC; however, as discussed below, this discrepancy is irrelevant to this discussion.

beyond the number of trucks and the pricing, and it did not include any extended warranties. (Id.). Both parties signed the Second PO on August 13, 2013. (Doc. No. 11-3).

Defendant delivered the four trucks to Plaintiff, and on February 28, 2014, Defendant issued two invoices to Plaintiff. (Doc. Nos. 1-2, 1-3). One invoice was for the four trucks, and the other invoice was for the extended warranties. (Id.). Both invoices referenced the same invoice number GKT-13-JFCT-03, which had been originally referenced in Plaintiff's Initial PO. (Id.). Plaintiff subsequently paid for the trucks and warranties. (Doc. No. 13: Affidavit of Phil Bader ¶ 15).

On May 29, 2015, Plaintiff filed its Complaint in this Court alleging claims for breach of contract, negligent misrepresentation, and unfair and deceptive trade practices under North Carolina law. Plaintiff's Complaint contains additional facts regarding the occurrences after the trucks were delivered and the alleged problems with Defendant's warranty and servicing work on the trucks. However, those facts are irrelevant to the Court's determination of Defendant's Motion, so they are not further discussed in this Order.

On August 7, 2015, Defendant filed its "Motion to Dismiss, or, Alternatively, Transfer Venue," (Doc. No. 10), challenging both personal jurisdiction and venue. The Magistrate Judge issued an M&R on October 8, 2015, (Doc. No. 16), concluding that Plaintiff's Initial PO was never accepted and that the parties' agreement did not include a forum selection clause. It also concludes that the Court has no general or specific jurisdiction over Defendant, and therefore, it recommends that Defendant's Motion to Dismiss be granted. Plaintiff filed objections to the M&R on October 26, 2015, (Doc. No. 17), which enumerated six objections. In general, Plaintiff objects to the M&R's treatment of Plaintiff's allegations, its findings that the parties'

agreement did not include a forum selection clause, and to its recommendation that Defendant's Motion be granted.

The issues have been fully briefed and are ripe for adjudication.

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) and (B). The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." Id. at § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of setting forth facts sufficient to demonstrate personal jurisdiction. See Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59–60 (4th Cir.1993). However, when the district court considers a motion to dismiss without an evidentiary hearing, a plaintiff need only prove a prima facie case of personal jurisdiction. Id. "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Id.

## III. DISCUSSION

In its Motion, Defendant argues that the Court lacks general or specific jurisdiction because Defendant lacks sufficient contacts with North Carolina to be hauled into court here. Defendant also contends that the forum selection clause included in the terms and conditions of Plaintiff's Initial PO does not apply because the Initial PO was not signed, rather the Second PO, which did not contain any terms or conditions, was signed by both parties.

Plaintiff replies that the forum selection clause contained in its Initial PO is valid and enforceable. Therefore, Plaintiff contends that Defendant has consented to jurisdiction in this Court and has waived any objections based on any alleged lack of personal jurisdiction or improper venue. Accordingly, Plaintiff objects to the M&R because it ultimately finds that the forum selection clause does not apply and that Defendant's Motion should be granted. Plaintiff focuses its argument solely on the application of the forum selection clause, and it does not address or provide any substantive argument that jurisdiction exists outside of the clause. In fact, both parties agree that the determination of Defendant's Motion to Dismiss hinges on whether the terms and conditions of Plaintiff's Initial PO are applicable, thereby giving this Court jurisdiction over Defendant pursuant to the forum selection clause.

Article 2 of the Uniform Commercial Code ("UCC") governs the formation of contracts for the sale of goods. U.C.C. § 2-102.[3] In order to have a binding contract, there must be "an offer and an acceptance demonstrating the parties' mutual assent." Safety & Envtl. Sys., Inc. v. S&W Chemicals, Inc., No. 5:06-cv-57-V, 2010 WL 1665299, at *7 (W.D.N.C. Apr. 23, 2010). Unlike the common law, however, the UCC applies more liberal rules relating to the formation of contracts. Id. It is well-settled that a purchase order constitutes "an offer which may then be accepted or rejected by a seller." Roanoke Cement Co. v. Falk Corp., 413 F.3d 431, 433 (4th Cir. 2005) (internal quotation marks omitted). The UCC specifies that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." U.C.C. § 2-204(1). The UCC further recognizes that, unless clearly stated otherwise, acceptance of an offer may be made "in any

---

[3] For simplicity, the Court will cite to the Uniform Commercial Code because it has been adopted with little alteration by Chapter 25 of the North Carolina General Statutes. In re Crowell, 304 B.R. 255, 259 (W.D.N.C. 2004).

manner and by any medium reasonable in the circumstances." U.C.C. § 2-206. Therefore, a contract for the sale of goods may be formed by any objective[4] expression of agreement, whether it be oral, written, by conduct, or any combination thereof. Safety & Envtl. Sys., Inc., 2010 WL 1665299, at *7.

The UCC's expanded concept of contract formation also allows for acceptances of offers to occur even when the documents exchanged by the parties are not in complete agreement. Pursuant to UCC § 2-207(1) "[a] definite and seasonable expression of acceptance or a written confirmation . . . operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms." Although no exact language is required to show that an acceptance is expressly conditional on assent to the terms of that acceptance, the offeree must make it clear to the offeror that the offeree is not willing to proceed with the transaction unless the offeree's terms are accepted. Stoughton Trailers, LLC v. ArcelorMittal Dofasco, Inc., No. 07-CV-374-BBC, 2008 WL 4722398, at *6 (W.D. Wis. Apr. 8, 2008) (citing Dorton v. Collins & Aikman Corp., 453 F.2d 1161, 1168 (6th Cir. 1972)). Furthermore, when terms or conditions contained in the buyer-offeror's purchase order are not contradicted by the acceptance, they become part of the contract. White, Summers, & Hillman, 1 Uniform Commercial Code § 2:11 (6th ed.). Likewise, when the buyer's initial written communication contains terms and conditions and subsequent communications from the seller are silent as to those terms, the seller's subsequent document operates as an acceptance of the terms in the buyer's initial offer.

---

[4] "[T]he test of the true meaning of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." 2 Williston on Contracts § 6:58 (4th ed.).

See Polyclad Laminates, Inc. v. VITS Maschinenbau GmbH, 749 F. Supp. 342, 345 (D.N.H. 1990).

As Defendant states, UCC § 2-207 "addresses circumstances in which the offer for the purchase of goods contains terms which the acceptance for the purchase of those goods does not contain and does not expressly reject." (Doc. No. 14 at 7–8). Contrary to Defendant's argument, that is precisely the situation presented in this case. After having conversations with and receiving a quote from Defendant, Plaintiff made an offer to purchase the trucks by sending Defendant the Initial PO. The Initial PO was emailed to Defendant under the subject line "GREENKRAFT-M216," which signified Plaintiff's purchase order number "M000000216." (Doc. No. 13-1 at 1–2). The Initial PO set forth the requested goods and prices, and it contained the terms and conditions of Plaintiff's offer, including, among others, a forum selection clause, which established Mecklenburg County, North Carolina, as the forum in which any dispute between Plaintiff and Defendant shall be litigated. Those terms and conditions established the parameters of the deal Plaintiff was willing to consummate.

Regarding acceptance, the Initial PO stated, "The Terms and Conditions which are attached hereto are incorporated and made part of this Purchase Order and are binding upon the Seller by its acceptance or performance under this Purchase Order." (Id. at 3). It also indicated, "Acceptance of this PO [is] subject to the conditions set herein." (Id. at 4). Furthermore, the "Terms and Conditions" page included the following provisions regarding how and under what terms Plaintiff's offer could be accepted:

> ACKNOWLEDGMENT: Shipment of an order shall be considered Seller's acceptance of these terms and conditions. If Seller acknowledges this Purchase Order on a different form, then the terms and conditions of Seller's acknowledgment are not a part of this Purchase Order until Buyer agrees in writing.

> DELIVERY AND ACCEPTANCE: . . . . By accepting this Purchase Order, Seller agrees that this Purchase Order constitutes the final agreement of the parties. . . .

(Id. at 5). The Initial PO, as well as the UCC, contemplates that Defendant may acknowledge and, therefore, accept the offer "on a different form;" however, any terms and conditions contained on Defendant's form do not become part of the contract unless Plaintiff expressly agreed to them in writing. The UCC also provides that Plaintiff's offer could be accepted by any expression of acceptance or agreement, including the conduct of Defendant. U.C.C. §§ 2-204, 2-206, 2-207.

Defendant has offered no evidence showing that it voiced any objection to the terms contained in the Initial PO or that it responded to Plaintiff's offer with any different or additional terms. In fact, every document sent by Defendant subsequent to Plaintiff's Initial PO was completely silent as to any term or condition. Several weeks after receiving the Initial PO, Defendant emailed Plaintiff, under the same subject referencing Plaintiff's PO number "M216," requesting that Plaintiff sign two of Defendant's forms so that Defendant could arrange to get the incentives. (Doc. No. 13-2). The next day, Defendant sent another email under the same subject header requesting that Plaintiff also sign the Second PO. (Id.). Defendant contends that this Second PO supplanted Plaintiff's Initial PO and became the new offer. The Court disagrees. Defendant's correspondences on August 12 and 13, 2013, together with the conduct of the parties indicate that the parties had reached an agreement and that Defendant had accepted Plaintiff's offer. These emails along with the additional forms and the Second PO, regardless of the entity listed or the title given the document, did not negate or void Plaintiff's Initial PO; they merely memorialized the prior acceptance and finalized the details of the offer. See U.C.C. § 2-202 (official comment 1) ("[The UCC] definitely rejects . . . [a]ny assumption that because a writing has been worked out which is final on some matters, it is to be taken as including all the

matters agreed upon."). The Court finds, therefore, that Plaintiff's Initial PO was the operable offer and that Defendant accepted Plaintiff's offer, in the least, by its conduct thereafter.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that the terms and conditions contained in Plaintiff's Initial PO are part of the contract between Plaintiff and Defendant. Therefore, the forum selection clause, which provides that any dispute shall be maintained in Mecklenburg County, North Carolina, is applicable. Forum selection clauses are generally binding and will be enforced unless enforcement is "unreasonable under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972); see also Johnston Cty. v. R. N. Rouse & Co., 414 S.E.2d 30, 33–35 (N.C. 1992). The burden is on the party seeking to avoid enforcement to make "a strong showing that [the clause] should be set aside." M/S Bremen, 407 U.S. at 15. Defendant has made no such showing. Therefore, the Court finds that the forum selection clause is binding and enforceable. Consequently, Plaintiff has put forth sufficient evidence to show that this Court has personal jurisdiction over Defendant in this suit, and therefore, Defendant's Motion to Dismiss pursuant to Rule 12(b)(2) is denied. Having so found, the Court need not address whether personal jurisdiction exists under the tests for general or specific jurisdiction.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss, or, Alternatively, Transfer Venue, (Doc. No. 10), is **DENIED**.

Signed: March 3, 2016

Robert J. Conrad, Jr.
United States District Judge